**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNIVERSAL CITY STUDIOS LLC and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, | Case No. 25-cv-12145 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Universal City Studios LLC and Universal City Studios Productions LLLP (collectively, "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks and/or unauthorized copies of Plaintiffs' federally registered copyrighted works to residents of Illinois (collectively, the "Unauthorized Products"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by offering for sale and/or selling Unauthorized Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of their registered trademarks and infringement of their registered copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and

infringement of their copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4.     Universal City Studios LLC and Universal City Studios Productions LLLP are engaged in film production and distribution in the United States, and are divisions of NBCUniversal, one of the world's leading media and entertainment companies.

5.     Plaintiffs' most successful film franchises include the Despicable Me and Fast & Furious franchises, and their library also includes individual films such as Jaws and E.T. (collectively, the "Universal Films").

6.     Products sold under the Universal brand and associated with the Universal Films include items such as apparel, accessories, appliances, bedding, books, toys, food and beverages, and souvenirs (collectively, the "Universal Products").  Universal Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers and websites, such as Walmart, Target, and Hot Topic, and the official shop.universalorlando.com website and Plaintiffs' Amazon store.

7.     The Despicable Me franchise began in 2010 with the film *Despicable Me*, which was followed by three sequels, *Despicable Me 2* (2013), *Despicable Me 3* (2017), and *Despicable Me 4* (2024), and by two spin-off prequels, *Minions* (2015) and *Minions: The Rise of Gru* (2022). It is the highest-grossing animated film franchise, with over $5.6 billion grossed worldwide.  The protagonist of the Despicable Me franchise is Gru, who is the adoptive father of three little girls and the boss of the Minions.  Minions perpetually serve the most despicable masters of the time. Some of the characters and character names made famous by the Despicable Me franchise include:



| Gru | Margo | Edith | Agnes |
|-----|-------|-------|-------|
| Stuart | Kevin | Bob | Dave |

8.     Copyrighted works associated with the Despicable Me franchise are registered with the United States Copyright Office.  The registrations include but are not limited to: "Despicable Me" (Reg. No. PA0001685728), "Despicable Me 2" (Reg. No. PA0001859348), "Despicable Me 3" (Reg. No. PA0002043544), "Despicable Me 4" (Reg. No. PA0002478457), "Minions" (Reg. No. PA0001952355), and "Minions: The Rise of Gru" (PA0002369070).   Plaintiffs have also registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---------------------|-----------|
| 4,522,438<br>4,522,437<br>4,419,214<br>4,515,131<br>4,605,902<br>4,354,512 | DESPICABLE ME |
| 6,169,993<br>6,456,114 | IT'S SO FLUFFY |
| 4,918,817<br>5,059,956<br>4,846,779<br>5,176,741 | MINIONS |

| | |
|---|---|
| 5,166,771<br>5,129,447<br>5,055,079<br>5,129,446 |  |
| 4,592,054<br>4,592,051<br>4,592,052<br>4,596,147 |  |

9.      The Fast & Furious franchise is centered on a series of action films that depict a world of street racing, heists, and spies.  The first film, *The Fast and The Furious*, was released in 2001.  Since then, nine more movies have been released, and the series has become Plaintiffs' biggest franchise and the eighth highest-grossing film series of all time, with a combined gross revenue of over $7 billion worldwide.   The franchise universe expanded with the six-season animated television series *Fast & Furious Spy Racers*, which premiered in 2019.  Plaintiffs have used the famous Fast & Furious name for many years and have registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 2,854,465 | THE FAST AND THE FURIOUS |
| 5,276,717<br>5,697,522<br>5,428,676<br>5,546,145<br>5,428,677 | FAST & FURIOUS |
| 6,069,963<br>6,731,983<br>6,731,984<br>6,731,985 | FAST & FURIOUS SPY RACERS |

| | |
|---|---|
| 7,762,741 | FAST X |

10.     Jaws is a franchise series that started with a thriller film directed by Steven Spielberg and released in the summer of 1975.  The first film follows a police chief, a marine biologist, and a fisherman set out to hunt and kill a great white shark that is terrorizing a small beach town of Amity Island and killing several of its residents.  The first film was a box-office success and won several awards for its ingenious production and memorable soundtrack, including the Academy Awards for Best Film Editing, Best Original Dramatic Score, and Best Sound.  The first film was followed by three sequels: Jaws 2, Jaws 3-D, and Jaws: The Revenge.  Plaintiffs have used the famous Jaws name for many years and have registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 1,100,741<br>2,276,097<br>2,316,903<br>6,791,161<br>7,139,772<br>7,426,341 | JAWS |
| 6,294,711<br>6,294,707 | YOU'RE GONNA NEED A BIGGER BOAT |
| 1,075,059 |  |
| 1,073,671 |  |

6

11.     E.T. the Extra-Terrestrial (or E.T. for short) is a 1982 science fiction film.  It follows the story of an alien that befriends ten-year-old Elliott Taylor and is stranded on Earth.  The film was produced and directed by Steven Spielberg and won several Academy Awards, including Best Original Score and Best Visual Effects.  Plaintiffs have used the E.T. name for many years and have registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 1,314,299<br>1,390,935<br>2,772,224 | E.T. |
| 1,312,269<br>1,346,436 | E.T. THE EXTRA-TERRESTRIAL |

12.     True and correct copies of the United States Registration Certificates for the trademarks associated with the Universal Films and listed in the tables above (collectively, the "Universal Trademarks") are attached hereto as **Exhibit 1**.

13.     The U.S. registrations for the Universal Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Universal Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the Universal Trademarks pursuant to 15 U.S.C. § 1057(b).

14.     The Universal Trademarks are distinctive when applied to the Universal Products, signifying to the consumers that the products originate from Plaintiffs and are manufactured to Plaintiffs' high-quality standards.  Whether Plaintiffs manufacture the products themselves or license others to do so, Plaintiffs have ensured that products bearing their trademarks are manufactured to the highest quality standards.

15.     The Universal Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the Universal Products have enabled the Universal brand to achieve widespread

recognition and fame and have made the Universal Trademarks some of the most well-known marks in the entertainment industries. The widespread fame, outstanding reputation, and significant goodwill associated with the Universal Films have made the Universal Trademarks invaluable assets of Plaintiffs.

16.     Plaintiffs have expended substantial time, money and other resources in advertising and promoting the Universal Trademarks.  In fact, Plaintiffs have expended millions of dollars in advertising, promoting, and marketing featuring the Universal Trademarks. Universal Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Universal Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. Universal Products have become among the most popular of their kind in the U.S. and the world. The Universal Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Universal Trademarks is of incalculable and inestimable value to Plaintiffs.

17.     True and correct copies of the United States Registration Certificates for the copyrights associated with the Universal Films and listed above (collectively, the "Universal Copyrighted Works") are attached hereto as **Exhibit 2**.

18.     Among the exclusive rights granted to Plaintiffs under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Universal Copyrighted Works to the public.

19.     Since first publication, the Universal Copyrighted Works have been used on the Universal Products and are currently featured on Plaintiffs' website at shop.universalorlando.com.

Universal Products featuring the Universal Copyrighted Works are advertised on Plaintiffs' website at shop.universalorlando.com and on Plaintiffs' Amazon store.

**The Defendants**

20.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiffs.  Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

21.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to discover Defendants' true identities and the exact interworking of their counterfeit network.   If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

22.     The success of Plaintiffs' brand has resulted in significant counterfeiting of the Universal Trademarks and copying of the Universal Copyrighted Works.  In recent years, Plaintiffs have identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States.   At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per

year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

23.    Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

24.    Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id*.; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] *Id.* at p. 22.

[6] *Id.* at p. 39.

[7] Chow, *supra* note 4, at p. 186-87.

U.S. bank accounts and, on information and belief, have sold Unauthorized Products to residents of Illinois.  Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 3**.

25.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Plaintiffs have not licensed or authorized Defendants to use any of their Universal Trademarks or copy or redistribute the Universal Copyrighted Works, and none of the Defendants are authorized retailers of genuine Universal Products.

26.     Many Defendants also deceive unknowing consumers by using the Universal Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Universal Products.  Other e-commerce stores operating under the Seller Aliases omit using Universal Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Universal Products.

27.      E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29.     Defendants are collectively causing harm to Plaintiffs' goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.  The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiffs in a way that individual actions, occurring alone, might not.

30.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

31.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.  Indeed, analysis of financial

account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

32.     Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the Universal Trademarks and/or copies of the Universal Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

33.     Defendants' unauthorized use of the Universal Trademarks and/or copies of the Universal Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

34.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

35.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Universal Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The Universal Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Universal Products offered, sold, or marketed under the Universal Trademarks.

13

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Universal Trademarks without Plaintiffs' permission.

37.     Plaintiffs are the exclusive owners of the Universal Trademarks. The United States Registrations for the Universal Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiffs' rights in the Universal Trademarks and are willfully infringing and intentionally using counterfeits of the Universal Trademarks. Defendants' willful, intentional, and unauthorized use of the Universal Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known Universal Trademarks.

40.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

41.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

42.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiffs.

43.     By using the Universal Trademarks on the Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

44.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

46.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

47.     The Universal Copyrighted Works constitute original works and copyrightable subject matters pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

48.     Plaintiffs have complied with the registration requirements of 17 U.S.C. § 411(a) for the Universal Copyrighted Works.  The Universal Copyrighted Works are protected by the U.S. Copyright Registration Nos. PA0001685728, PA0001859348, PA0002043544, PA0002478457, PA0001952355, and PA0002369070, which were duly issued to Plaintiffs by the United States Copyright Office.  At all relevant times, Plaintiffs have been and still are the owners

of all rights, title, and interest in the Universal Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

49.     The Universal Copyrighted Works is published on the internet and available to Defendants online.  As such, Defendants had access to the Universal Copyrighted Works via the internet.

50.     Without authorization from Plaintiffs or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Universal Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Universal Copyrighted Works.  Such conduct infringes and continues to infringe the Universal Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51.     Defendants reap the benefits of the unauthorized copying and distribution of the Universal Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

52.     Defendants have unlawfully appropriated Plaintiffs' protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Universal Copyrighted Works.

53.     On information and belief, Defendants' infringement has been willful, intentional, purposeful, in disregard of, and with indifference to Plaintiffs' rights.

54.     Defendants, by their actions, have damaged Plaintiffs in an amount to be determined at trial.

55.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringement of the Universal Copyrighted Works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Universal Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Universal Product or is not authorized by Plaintiffs to be sold in connection with the Universal Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Universal Copyrighted Works in any manner without the express authorization of Plaintiffs;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Universal Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the Universal Trademarks and/or the Universal Copyrighted Works;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

e.  further infringing the Universal Trademarks and/or the Universal Copyrighted Works, and damaging Plaintiffs' goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Universal Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Universal Copyrighted Works;

2) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction including, without limitation, any online marketplace platforms such as Amazon, eBay, PayPal, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Universal Trademarks and/or the Universal Copyrighted Works;

3) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Universal Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Universal Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Universal Copyrighted Works, Plaintiffs are entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiffs' election prior to any final judgment being entered, Plaintiffs are entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiffs are further entitled to recover their attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 3rd day of October 2025.　　　　Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
lfaria@gbc.law

*Counsel for Plaintiffs Universal City Studios LLC and Universal City Studios Productions LLLP*

19